# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FAHEEM RODGERS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-6848** |
| | : | |
| **MONTIUM,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                    **April 21, 2026**

*Pro se* Plaintiff Faheem Rodgers brings this civil action asserting claims of employment

discrimination and retaliation under Title VII of the Civil Rights Act of 1964.  He also seeks leave

to proceed *in forma pauperis*.  For the following reasons, the Court will grant Rodgers leave to

proceed *in forma pauperis* and permit him the option of filing an amended complaint or proceeding

only with his Title VII color-based discrimination claim.

## I.      FACTUAL ALLEGATIONS[1]

In May 2023, Rodgers was hired by Defendant Montium as a maintenance engineer.

(Compl. ¶ 9.)  Sometime in July 2023, Joe Klapper, a Turn Manager at Montium, observed Rodgers

eating a bacon, egg, and cheese sandwich and chastised him for eating pork, mistakenly assuming

that Rodgers was Muslim.  (*Id*. ¶¶ 8, 10.)  Rodgers reported this and other related incidents to

Property Manager Mark Katz in October 2023, informing him that Klapper "assumed he was

Muslim and repeatedly asked him if he was Muslim."  (*Id*. ¶ 11.)  Instead of addressing the issue

with Klapper, Katz "asked [Rodgers] whether [he] was in fact Muslim and what his name stood

---

[1]      The facts set forth in this Memorandum are taken from Rodgers's Complaint (ECF No. 1).
The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

for." (*Id*. ¶ 12.) Throughout Rodgers's employment at Montium, Klapper continued asking him if he was Muslim and "on numerous occasions" referred to him as "Farheem" despite Rodgers correcting him. (*Id*. ¶¶ 13-14.)

On November 1, Klapper assigned Rodgers and another employee named Keshawn Gilmore with clearing out a vacant apartment, Unit 410. (*Id*. ¶ 15.) Gilmore is African American but has a lighter complexion than Rodgers. (*Id*. ¶ 31.) Katz told Rodgers and Gilmore they could take anything of value from the apartment while clearing it out, which was standard practice in "turning over" a vacant apartment. (*Id*. ¶ 15.) On November 2, Rodgers and Gilmore went to Unit 410, bagged up the items they wanted to keep, and drove them to their respective homes. (*Id*. ¶¶ 17-18.) They then returned to the apartment to continue the turnover process. (*Id*. ¶ 18.) Approximately four or five hours later, Klapper informed Rodgers and Gilmore that there had been a mistake, that Unit 410 should not have been emptied. (*Id*. ¶ 19.) Rodgers then returned to his home, retrieved all of the items he believed he had taken from the apartment, and brought them back to Unit 410. (*Id*. ¶¶ 20-21.)

On November 7, 2023, Rodgers was called into a meeting with three Montium managers, including Katz, Debra Fontanarosa, and Shimmy Szanzer. (*Id*. ¶ 22.) At the meeting, Rodgers "reiterated his good faith belief that he had returned everything to the unit on November 2, 2023." (*Id*.) Fontanarosa called Rodgers a thief and played a video of him carrying bags from Unit 410 to his vehicle. (*Id*. ¶ 23.) Upon watching the video, Rodgers realized that he may have neglected to return one bag of items to Unit 410. (*Id*. ¶ 24.) He told the Montium managers that he would return home right away and retrieve the overlooked bag. (*Id*.) The managers told him to clock out immediately and retrieve any items from Unit 410 that were still at his home. (*Id*.) Rodgers went home and returned with a bag of baby clothes he had mistakenly not returned to the unit. (*Id*. ¶

2

25.) When he arrived back to work, he observed Gilmore enter Manager Mark Fayne's office with a bag of clothes. (*Id*. ¶ 28.) Rodgers believes the bag contained items that Gilmore had taken from Unit 410 and similarly had neglected to return until November 7. (*Id*.) Later that day, Rodgers was told to return his keys and not return to work. (*Id*. ¶ 29.) The next day, he received a letter terminating his employment with Montium. (*Id*. ¶ 30.) Rodgers asserts that Gilmore was not terminated. (*Id*. ¶ 31.) Based on the above allegations, Rodgers asserts claims of employment discrimination and retaliation under Title VII. (*Id*. at 5-6.) He alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue Letter on July 15, 2025.[2] He seeks retrospective declaratory relief,[3] compensatory damages, and attorney's fees and costs. (*Id*. at 6-7.)

## II.    STANDARD OF REVIEW

The Court will grant Rodgers leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Rodgers's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil

---

[2]    Rodgers states that he attached a copy of the Notice of Right to Sue Letter as an exhibit, (Compl. ¶ 6.), however there are no exhibits attached to Rodgers's Complaint.

[3]    Declaratory relief is unavailable to adjudicate past conduct, so Rodgers's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Rodgers is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

Title VII prohibits "discrimination in employment based on several personal characteristics" including race, color, religion, national origin, and sex. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)). A plaintiff may state a claim for employment discrimination by pleading facts to support that: (1) he

4

is a member of a protected class, (2) he was qualified for the position he either held or sought, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007) (*per curiam*); *see also Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998).

Title VII also prohibits an employer from retaliating against an employee (a) for opposing any act made unlawful by the employment discrimination statutes, or (b) because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3; *Allstate Ins. Co.*, 778 F.3d at 449. To state a claim for retaliation, a plaintiff must allege that: (1) he engaged in conduct protected by Title VII; (2) the employer took adverse action against him; and (3) a causal link exists between his protected conduct and the employer's adverse action. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 60 (3d Cir. 2019). Not every complaint about employment entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).

To plead a claim under Title VII, a plaintiff need not allege each element necessary to establish a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of his claims and demonstrate a plausible right to relief. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, to pass statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the complaint must "put forth allegations that raise

a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Applying this framework to Rodgers's claims, he must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of retaliation and discrimination based on his race, color, and/or perceived religion.

### A.    Discriminatory Termination

Rodgers asserts that he was fired because he was perceived to be Muslim. There is disagreement among the federal courts as to whether *perceived* membership in a protected class is actionable under Title VII. In *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit approved of such a theory for discrimination based on age and disability. To explain its decision, the court wrote in *dicta*:

> "[I]magine a Title VII discrimination case in which an employer refuses to hire a prospective employee because he thinks that the applicant is a Muslim. The employer is still discriminating on the basis of religion even if the applicant he refuses to hire is not in fact a Muslim. What is relevant is that the applicant, whether Muslim or not, was treated worse than he otherwise would have been for reasons prohibited by the statute."

*Id.* at 571 (holding that the disability and age discrimination statutes at issue in the case supported a "perception theory of discrimination" due to the fact that they made it illegal for an employer to discriminate "because" the individual has engaged in protected activity); *but see Smith v. Specialty Pool Contractors*, No. 07-1464, 2008 WL 4410163, at *5 (W.D. Pa. Sept. 24, 2008) (citing *Fogleman* in denying summary judgment on a perceived religion claim, while acknowledging that "[n]either the United States Supreme Court nor the Court of Appeals for the Third Circuit has ruled that a 'perception theory' is applicable in Title VII discrimination cases."). Courts in the Second and Fourth Circuits, however, have held that only membership in a religious group, not perceived

6

membership, is protected under Title VII.  *See Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007) (holding that plaintiff's "perceived religion claim . . . fails as a matter of law, for the protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class" and reasoning that "if Congress had wanted to permit a . . . cause of action under Title VII for 'perceived religion' discrimination [similar to "perceived disability" claims under the ADA], it could have so provided.  It did not."); *see also El v. Max Daetwyler Corp.*, No. 09-415, 2011 WL 1769805 (W.D.N.C. May 9, 2011) (collecting cases and noting that "[w]hile a *perception* that a person is suffering from a disability is actionable under the Americans with Disabilities Act, it does not appear that Title VII recognizes such a claim."), *aff'd*, 451 F. App'x 257 (4th Cir. 2011).

In any event, Rodgers's assertion of a causal connection between his perceived religion and his termination in November 2023 is undeveloped and conclusory.  He alleges only that "[a]lthough Plaintiff does not identify as Muslim, Plaintiff alleges [Montium] perceived him to be Muslim." (Compl. ¶ 8.)  He does not allege that anyone at Montium believed Rodgers was Muslim and/or harbored anti-Muslim animus, and that he was terminated because of that perception.[4] Thus, his religious discrimination claim fails to meet the pleading standard.  *See Connelly*, 809 F.3d at 786 ("Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."); *see also Martinez*, 986 F.3d at 265 ("Plausible does not mean possible.").  However, the Court will

---

[4]    Rodgers alleges only that he had complained to Katz in October 2023 about Klapper's conduct and during the conversation Katz asked him if he was Muslim.  Rodgers does not allege that Katz actually believed he was Muslim or that he had any discriminatory animus based on a perception that Rodgers was Muslim.  And Rodgers does not allege that Klapper was involved in the decision to terminate him, nor that Katz, Fontanarosa, or Szanzer was influenced by a perception that Rodgers was Muslim in doing so.

7

grant Rodgers leave to amend if he can allege additional facts to state a plausible religious discrimination claim under the standards set forth above.

Rodgers has alleged a plausible claim that he was subject to disparate discipline based on his skin color. "In order to make out a prima facie case of disparate discipline, plaintiff must show that (a) he is a member of a protected class, (b) his misconduct was comparable in seriousness to that of comparably situated Caucasian employees, or "comparators," and (c) he was disciplined more harshly than were the comparators." *Davis v. Nat'l R.R. Passenger Corp.*, 733 F. Supp. 2d 474, 491 (D. Del. 2010). Rodgers asserts that he was terminated for neglecting to return certain items to Unit 410, while the lighter-skinned Gilmore was not disciplined at all despite apparently engaging in the same misconduct. (Compl. ¶¶ 28-31.) Accepting all inferences in his favor, Rodgers plausibly alleges that the harsher discipline he faced was due to his darker skin color. Accordingly, his skin color-based discrimination claim will be permitted to proceed past statutory screening.

### B.    Retaliatory Termination

Rodgers asserts that he was terminated on November 8, 2023 in part based on retaliation for having complained to Property Manager Mark Katz sometime in October 2023 about alleged harassing behavior in July 2023 by Joe Klapper. (Compl. ¶¶ 10-11, 30, 40-42.) To state a claim for retaliation, a plaintiff must allege that (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) there is a causal link between the protected activity and the adverse action. *Kenergerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). To demonstrate a causal connection, a plaintiff generally must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. & Med.*

*Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014). Accepting all inferences in Rodgers's favor, he alleges that he was opposing conduct by Klapper that was prohibited by Title VII and he was therefore engaged in Title VII protected conduct.[5] However, Rodgers does not allege sufficient facts to suggest a causal link between his complaint to Katz sometime in October and his termination in early November, other than stating that the two events were separated by "around a month." (Compl. ¶¶ 42-43.) In other words, Rogers fails to allege with any specificity the amount of time that passed between his complaint and his termination. This is a problem because, "[w]hile the Third Circuit has held that 'unduly suggestive temporal proximity may give rise to an inference of causation, [it has] never held that a temporal gap of one month alone sufficiently demonstrates a causal connection.' Indeed, the Third Circuit has typically declined to infer causation where the temporal gap between the protected activity and adverse employment action has been longer than a few weeks." *Smondrowski v. Edgewood Co., Inc.*, No. 24-1297, 2025 WL 3678885, at \*4 (E.D. Pa. Dec. 18, 2025) (collecting cases). Thus, the nonspecific lapse of time does not by itself support a plausible allegation of retaliatory animus where Rodgers has not alleged a pattern of antagonism. *Washco v. Federal Express Corp.*, 402 F. Supp. 2d 547, 560 (E.D. Pa. 2005) ("One act does not constitute a 'pattern' of antagonism."); *Disilverio v. Service Master Professional*, No. 05-1638, 2007 WL 1029759 at \*11 (W.D. Pa. 2007) ("one incident does not make a pattern of retaliatory antagonism"). However, the Court will grant Rodgers leave to amend if he can allege additional facts to plead a plausible claim under the legal standard provided above.

---

[5]   In determining whether a plaintiff engaged in Title VII protected conduct, the relevant inquiry is whether he held "an objectively reasonably belief, in good faith" that he was opposing conduct prohibited by Title VII, rather than whether the underlying conduct actually violated Title VII. *See Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (citing *Clark County v. Breeden,* 532 U.S. 268, 271 (2001) (*per curiam*) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination)).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Rodgers leave to proceed *in forma pauperis* and dismiss the Complaint with the exception of Rodgers's Title VII skin color-based discrimination claim against Montium.  Rodgers may opt to proceed only on that claim or file an amended complaint to attempt to cure the defects the Court has identified in his remaining claims, which are dismissed without prejudice.  An appropriate Order regarding amendment follows.

**BY THE COURT:**


/s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, J.**